## Chicago Veneer Company v. James H. Arnold, Boyd Arnold and J. H. Taylor.

### Bryant v. James H. Arnold and R. B. Arnold.

### Greeno v. Same.

(Decided December 18, 1914.)

### Appeals from Laurel Circuit Court.

1.   Contracts—Writings—Construction.—In construing a writing the court will read it in the light of the circumstances under which it was executed and the purpose of its execution.

2. Contracts—Writings—Construction.—A writing authorizing A to cut timber at a point named in the contract will not be construed as a sale of timber not cut by him when the writing was only intended to authorize a cutting of some timber to force an adverse claimant to bring therefor a suit to be defended by the owner of the land.

O. H. WADDLE & SON and STEPHENS & STEELY for appellant.

HAZLEWOOD & JOHNSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

These three appeals, involving the same question, will be disposed of in one opinion. Mrs. Roberta S. Bryant is the owner of a large tract of land in Laurel county. In February, 1909, she sold to the Chicago Veneer Company, for $6.50 per thousand feet, certain poplar and cucumber timber on the tract, and, on July 29, 1909, she sold to C. C. Greeno, certain white oak timber at $1.50 a tree. In February, 1912, R. D. Arnold and James H. Arnold entered upon the land and began cutting timber thereon; thereupon these three suits followed brought by Roberta S. Bryant, the Chicago Veneer Company and C. C. Greeno to enjoin them from cutting the timber on the ground that they were cutting it without right. In defense of the suits, which were heard together, the Arnolds set up a right to the timber under a contract in writing made with W. J. Hamilton as agent, which is as follows:

"This will authorize Boyd Arnold to cut all the timber on the Bryant land at a point known as Spring Branch near Nobusiness Creek and between Nobusiness and Rock Creek. He is to pay to L. E. Bryant one dollor per M. for log timber and two and one-half cents per tie for tie timber. Five Dollars per M. staves for 44 inch staves. Three Dollars per M. staves for beer staves, and Ten Dollars for each M. staves for Pipe Staves. To be paid when said timber is inspected and logs delivered.

"This August 6th, 1903.
　　　　　　　　　　　　　　L. E. BRYANT,
　　　　　"By W. J. Hamilton, Agt."

The plaintiffs, in substance, pleaded that Hamilton was without authority to sell the timber, and, in fact,

did not sell it; the defendant replied pleading a ratification of the contract made by Mrs. Bryant. Proof was taken, and, on final hearing, the circuit court entered judgment in favor of the Arnolds; the plaintiffs appeal.

R. B. or Boyd Arnold, as he is called in the contract, is a son of J. H. Arnold, who is a country merchant, and claims under the contract made with his son. Mrs. Roberta S. Bryant is a widow, sixty-eight years of age, living in Danville. Her husband, from whom she received this land, having died in the year 1888, her son, Louis E. Bryant, has looked after the land for her, but had no authority to sell the timber on the land without her approval of the contract in writing, she making it a rule to make no trades without the approval of her counsel. Louis E. Bryant has spent many years of his life in surveying the land, locating the lines and keeping off trespassers. W. J. Hamilton was one of his tenants on the land and Louis E. Bryant made Hamilton an agent by a writing. The writing is not produced, but the testimony is that Hamilton had no authority to sell without the approval of Roberta S. Bryant. Hamilton had no communication with Mrs. Bryant or authority from her directly. In the year 1903, Ford and Williams set up claim to two surveys, one for 64 acres and the other for 135 acres patented by one Pointer about the year 1890, and lying within the patent under which Mrs. Bryant claimed, which was made in the year 1842. Louis E. Bryant wished to get the title to the land settled, and so he instructed Hamilton to make an arrangement with Arnold by which Arnold would cut some timber within the Ford and Williams claim, to force them to bring a suit, Bryant to defend the suit, pay all the expenses, pay Arnold for his time and give him some of the cross tie timber for bringing on the suit. Under this authority Hamilton saw Arnold and delivered to him the writing above set out. Arnold commenced cutting the timber at the point referred to in the writing; Ford & Williams brought suit against him. Mrs. Bryant defended the suit in her own name, alleging that Arnold had cut the timber referred to by her authority; that she was the owner of the land and had authorized Arnold to cut it, and he had not cut it without right. On the final hearing of that case, Mrs. Bryant won. Arnold did no cutting after the suit was brought, an injunction having been obtained restraining him from further cutting.

The suit was decided finally early in the year 1909, and after the decision of it in her favor, Mrs. Bryant sold the timber on the land to the Chicago Veneer Company and C. C. Greeno, as above stated. Nothing was done by Arnold until about the 5th of February, 1912, when he went upon the land and began cutting timber. Up to this time neither Mrs. Bryant nor her son had any knowledge of the writing given by Hamilton to Arnold or notice of any kind that Arnold claimed to have bought the timber from Hamilton.

It will be observed that, by the writing, Boyd Arnold is authorized "to cut all timber on the Bryant land at the point known as the Spring Branch near Nobusiness Creek and between Nobusiness Creek and Rock Creek." This point is well established; the Spring Branch, which is the only one on the Bryant tract, is known as the Pointer Spring Branch, and the purpose of authorizing him to cut at this point was to have the cutting done within the Pointer surveys under which Ford & Williams claimed. Arnold insists that he was authorized to cut all the timber on the Bryant land, not only at the point known as the Spring Branch near Nobusiness Creek, but also all the timber on the Bryant land between Nobusiness and Rock Creeks. But this is not the natural meaning of the writing. He was authorized to cut all the timber at the point known as the Spring Branch. The other words are added to describe and fix the point meant; for, if all the timber between Nobusiness Creek and Rock Creek on the Bryant land was intended to be included, so much of the contract as designates a specific point in that area was meaningless. By the writing, Arnold assumed no obligation; he was not obliged to cut any timber, and, if he had failed to cut any timber, no action could have been brought against him for the enforcement of the contract. So far as he accepted the contract and executed it, it is binding on Mrs. Bryant, for to this extent at least she ratified it, but as to the timber that he did not cut, and as to which he has not accepted the contract, he has under the proof incurred no obligation, and as the obligation of a contract must be mutual, she has incurred none. When the language of the writing is read in the light of the circumstances of the parties, and the purpose they had in view, we think it is clear that the peculiar phraseology used was intentional and should be construed in the natural meaning of the words. The contract does not pur-

port to be a sale of any timber. It does not describe or define the land from which the timber is to be cut; 'it does not impose any obligation upon Arnold; it simply authorizes him to cut the timber at a given point on certain terms; it fixes no time for the cutting of the timber; it is on its face only a present authority to cut, and it clearly appears from the evidence that the purpose of the parties in making the contract was to have some of the timber cut then·at this point to force Ford & Williams to bring suit. The paper construed literally accords perfectly with the purpose of the parties in executing it and it should not be given a broader construction, defeating the purpose of the parties in its execution. It is true that people sometimes draw written contracts very informally, using words that do not aptly express their meaning; and many cases may be found where such informal contracts have been enforced according to the real intention of the parties; but such is not this case. Here the authority of the agent was limited; the language of the contract is within his limited authority, and that he was pursuing his authority is shown by the fact that, by the writing, he only authorized Arnold to cut the timber at a point known as the Spring Branch. The consideration which Arnold received in the arrangement was the low price he was to pay for the timber he cut, about one-fifth the price for which it was afterwards sold to the Chicago Veneer Company and Greeno. Arnold at the time so construed the contract, for he did the cutting at the point named. His subsequent conduct also indicates that he, at the time, but this construction upon the contract and that his present claim is an afterthought; for he took no steps to cut the timber until February, 1912, or about three years after it had been sold to the Chicago Veneer Company. In the meantime, he had not recorded his contract made with Hamilton, and, in fact, did not put it on record until March 29, 1913.

We, therefore, conclude that the Arnolds have no right to the timber, and that the circuit court should have so adjudged.

Judgment reversed and cause remanded for a judgment as above indicated.